Indian claims; attorney expenses; interest on funds expended; expert witness fees. — On January 11, 1980 the court entered the following order:.
Rodney J. Edwards, attorney of record for plaintiffs. Edwards, Edwards & Bodin, of counsel.
Craig A. Decker, with whom was Assistant Attorney General James W. Moorman, for defendant.
Before Friedman, Chief Judge, Nichols and Smith, Judges.
This matter is before the court on the petition of Jay H. Hoag and Rodney J. Edwards for reimbursement of attorneys’ expenses incurred in the prosecution of Docket No. 18-B. Pursuant to 25 U.S.C. § 70v (1976), this case was transferred to the Court of Claims from the Indian Claims Commission on October 13, 1978, the petition for reimbursement of attorneys’ expenses being the sole remaining issue. Final awards were entered by the Indian Claims Commission on July 27, 1965, in favor of plaintiffs as follows: (1) to the Minnesota Chippewa Tribe on behalf of the Mississippi Bands of Chippewa Indians in the sum of $1,671,262.18, and (2) to the Minnesota Chippewa Tribe on behalf of the Pillager and Lake Winnibigoshish Bands of Chippewa Indians in the sum of $2,260,942.90.
Attorneys Hoag and Edwards filed their petition on January 17, 1968; their original request was for the sum of $131,525.67. However, after several adjustments, this sum was increased to $136,093.31. Copies of the petition were served upon counsel for the United States and upon the Minnesota Chippewa Tribe. The Minnesota Chippewa Tribe did not object to the claimed expenses, but it did ask for assurances that the tribe would be compensated for the expenses it paid and for funds it advanced to its attorneys. It estimated these expenses and advances to total $14,417.96. In response, the Indian Claims Commission informed the Minnesota Chippewa Tribe that the petition for reimbursement of expenses had acknowledged, in effect, that $14,500.53 of the disbursements covered by the petition was paid by the Minnesota Chippewa Tribe. No further objections or comments have been filed by the Minnesota Chippewa Tribe, and it is therefore concluded that it has no objection to the petition in its present posture.
The legal staff of the Indian Claims Commission did object to $51,019.05 worth of items claimed by the *553 petitioners as reimbursable expenses. Following correspondence between petitioners and the Indian Claims Commission, the petitioners chose to withdraw their claim for $27,945.28, which represents all of the questioned items with the exception of item No. 485. Thus, the issue left for resolution is the allowability of this item.
Item No. 485 is a claim of $23,073.77 for interest on deferred payments to Mr. W. D. Davis, plaintiffs’ appraisal expert. The legal staff of the Indian Claims Commission felt that it could not recommend reimbursement for this item "without further amplification or support.” In reply, the petitioners submitted, as evidence, four letters between themselves and Mr. Davis. It is petitioners’ contention that this set of correspondence establishes an express contractual obligation on behalf of the petitioners to pay 6 percent simple interest to Mr. Davis on all debts due him for his appraisal work in Docket No. 18-B.
This court has the authority under 25 U.S.C. § 70v-3 (Supp. II, 1978) to award petitioners all reasonable expenses incurred in the prosecution of this claim. However, for an item to be a reimbursable expense, the attorneys must have actually paid the item or they must be firmly obligated to do the same. Northern Paiute Nation v. United States, 10 Ind. Cl. Comm. 361 (1962). Since the record reveals that item No. 485 has not been paid, petitioners must make a threshold showing that they are firmly obligated to pay this item.
While the correspondence submitted by the petitioners does not establish an express contractual obligation on the part of the petitioners to pay interest to Mr. Davis, it does clearly show that an implied-in-fact obligation exists. It is therefore concluded that item No. 485 is an attorney’s expense, which is subject to reimbursement. The first letter, dated March 5, 1958, was from Mr. Davis to petitioners. It was in reference to a meeting held between Mr. Davis and petitioner Rodney J. Edwards on February 22, 1958, in Joplin, Missouri. At that meeting it was suggested that all of the Chippewa balances, other than those relating to Docket No. 18-A, should be charged simple interest, beginning on January 1, 1957, and continuing until the entire balance was paid. In his letter, however, Mr. Davis expressed unhappiness with the *554 proposed arrangement, and with the long delay in receiving payment. The letter stated:
Since you have not confirmed our discussion in Joplin, I mean to propose that you consider interest on the charged amounts beginning with the cases following No. 18-A, the interest to be simple interest charged at the rate of 6% per annum beginning thirty days after each billing date. [Emphasis supplied.]
The letter indicates that the proposal discussed at the Joplin meeting might have constituted an offer by Mr. Davis, subject to acceptance by petitioner Hoag. But it is clear that even if this were the case, this letter effectively revoked any prior offers.
The second letter, dated January 5, 1959, was also written by Mr. Davis and addressed to the petitioners. After commenting on petitioners’ apparent unwillingness to negotiate in this matter, Mr. Davis once again suggested a 6 percent simple interest rate on the unpaid balances beginning 30 days after each billing date.
Petitioners responded in a letter dated January 8, 1959. They acknowledged as approved and correct the plan discussed at the Joplin conference. They refused, however, to accept the proposal of Mr. Davis that the date of interest begin 30 days after each billing date unless Mr. Davis would agree to forego any bonus in the case.
The fourth and final letter, dated January 14, 1959, was from Mr. Davis to the petitioners. The opening line reads: "The proposal contained in your letter of January 8, 1959, is not acceptable.” Mr. Davis then proceeded to reiterate his proposal made in the letter of January 5, 1959.
It is clear that this correspondence does not establish an express contractual relationship between the petitioners and Mr. Davis. Even if it is assumed that the proposal made at the Joplin conference was an offer by Mr. Davis, petitioners’ attempt to accept that proposal in the January 8 letter was unavailing since two prior letters of Mr. Davis revoked any possible offer made therein. The submitted letters show only a series of offers and counteroffers; the unresolved issue being whether Mr. Davis would be entitled to a bonus. Thus, the parties were never able to come to any written agreement.
Nonetheless, the correspondence does show that petitioners and Mr. Davis were in agreement that 6 percent *555 interest should be paid to Mr. Davis beginning 30 days after each billing date. Indeed, this understanding appears to have been recognized and implemented as far as possible by both the petitioner and Mr. Davis. Evidence of this appears in a September 1, 1967, letter from Mr. Davis to the petitioners which provided in pertinent part:
Here is a summary of the amount due as of August 1, 1967. It is calculated at .06 per annum simple interest beginning 30 days after the billing. I will appreciate your checking it to see if the totals are correct. Then when the money is available, all that will be necessary will be to add on the interest from August 1, 1967.
That the petitioners clearly recognized their obligation to Mr. Davis is shown by their inclusion of item No. 485 in their petition of reimbursible expenses.
After the briefing to Trial Judge Colaianni and the filing of his memorandum report granting this expense, the government has belatedly challenged the award of this item on the grounds that the Minnesota Chippewa Tribe is immune from interest charge unless its sovereign immunity has been expressly waived by statute or contract.
The government’s contention that the sovereign immunity of a tribe acts as a bar to the assessment of interest on litigation expenses was expressly rejected by the Indian Claims Commission in a decision that was affirmed by this court. Pillager Bands v. United States, 40 Ind. Cl. Comm. 249 (1977), App. 5-77 orders entered November 9, 1978, and January 5, 1979. In that case the government had argued that the principle of immunity from interest on tribal claims obtaining to the United States discussed in United States v. Delaware Tribe, 192 Ct. Cl. 385, 427 F. 2d 1218 (1970), should also apply to interest claimed on attorney expenses against the tribal clients. The Commission found that the establishment by Congress of the revolving loan fund for litigation expenses in Indian claims which provided for assessment of interest on funds advanced therefrom; see 25 U.S.C. § 70n-1, n-2; demonstrates that the immunity discussed in the Delaware case does not obtain to tribal clients.
While the Pillager decision goes on to deny the award of the interest expense on purely contractual grounds, on the *556 facts of the present case, we see no contractual basis for a denial of the interest expense claim. The attorney-client contracts in this case provided, in slightly varying language, for payment of all reasonable and necessary litigation expenses paid or incurred. We have determined above that expense item 485 was incurred under an implied-in-fact contract. The remaining contractual requirement, that the expense be reasonable and necessary, has been conceded by the government; Government’s Reply on Attorney Expenses, p. 2; and is not contested by the tribe.
It is accordingly concluded that petitioners have shown that an implied-in-fact obligation between petitioners and Mr. Davis exists and that they are firmly obligated to pay interest on debts due to Mr. Davis. Accordingly, item No. 485 must be allowed.
Petitioners will be denied recovery of $27,945.28 of the total claimed expenses of $136,093.31, as recommended by the Indian Claims Commission. Included in the total disallowance is the sum of $14,500.58 which represents that part of petitioners’ expenses already paid by the Minnesota Chippewa Tribe.
There remains for resolution two final matters. The record indicates that on June 10, 1970, petitioner Jay H. Hoag withdrew as attorney of record for plaintiffs in this case, and that since the withdrawal, the petition has been prosecuted solely by petitioner Rodney J. Edwards. Under these circumstances, it is appropriate to treat this petition as one by Mr. Edwards, but on behalf of himself and all other attorneys who represented plaintiffs in Docket No. 18-B. The award will be directed accordingly.
Finally, it is noted that Docket No. 18-B culminated in two separate final awards. Thus, it is necessary to apportion among the two awards any reimbursement of attorney expenses. The record shows that the Mississippi Bands received 42.50191 percent of the total award, and the Pillager and Lake Winnibigoshish Bands received the remaining 57.49809 percent. The most appropriate allocation would be one based upon this division of the total award.
Accordingly, it is hereby ordered and determined that Rodney J. Edwards, on behalf of himself and all other *557 attorneys who represented plaintiffs in Docket No. 18-B, is entitled, pursuant to 25 U.S.C. § 70v-3 (Supp. II 1978), to reimbursement of expenses of one hundred eight thousand, one hundred forty-eight dollars and three cents ($108,148.03). This sum is to be paid out of the awards made to plaintiffs by the Indian Claims Commission on July 27, 1965; forty-five thousand, nine hundred sixty-four dollars and ninety-eight cents ($45,964.98) to be paid from the award to the Mississippi Bands, and sixty-two thousand, one hundred eighty-three dollars and five cents ($62,183.05) to be paid from the award to the Pillager and Lake Winnibigoshish Bands.